UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Charles D. GIANETTI, M.D., <br> *Plaintiff*, | ) <br> ) <br> ) | 3:21-CV-00858 (KAD) |
| v. | ) <br> ) | |
| NEW ENGLAND LIFE INSURANCE COMPANY, <br> *Defendant*. | ) <br> ) <br> ) | AUGUST 23, 2022 |

**MEMORANDUM OF DECISION**
**RE: DEFENDANT'S MOTION TO DISMISS, ECF No. 11**

Kari A. Dooley, United States District Judge:

Plaintiff Charles D. Gianetti, M.D., ("Plaintiff" or "Gianetti") brings this five-count complaint against Defendant New England Life Insurance Company ("Defendant" or "NELICO") seeking redress for costs that Plaintiff incurred while appealing a tax assessment. Plaintiff alleges that the Internal Revenue Service ("IRS") assessed a tax deficiency against him because Defendant misrepresented Plaintiff's capital gain on a 1099-R following Plaintiff's surrender of a life insurance product issued by the Defendant as part of a previous settlement agreement between the parties.

Pending before the Court is the Defendant's motion to dismiss the complaint in its entirety. For the reasons set forth below, the motion is GRANTED as to Counts I, II, III, and V, and DENIED as to Count IV.

**Background & Allegations**

Plaintiff is a retired physician residing in Naples, Florida, though at the time relevant to the Complaint he also maintained a residence in Trumbull, Connecticut. (Compl. ¶ 1, ECF No. 1-1.) The Defendant sells life and health insurance products, with its principal place of business and place of incorporation in Massachusetts. (Compl. ¶ 4; Def.'s Statement in Support of Removal ¶

3, ECF No. 2.) Plaintiff filed this case in Connecticut state court seeking in excess of $15,000 before Defendant removed the case, on the basis of diversity jurisdiction, to this Court, on June 23, 2021.

The parties have had multiple disputes regarding the life insurance policy underlying the instant lawsuit and have previously litigated two cases in this district: *Charles D. Gianetti, M.D. et al. v. The New England et al.*, No. 3:96-cv-00442 (AWT) (D. Conn.) (the "1996 Lawsuit"), and *Charles D. Gianetti, M.D. v. New England Life Insurance Co.*, No. 3:08-cv-01847 (AVC) (D. Conn.) (the "2008 Lawsuit"). (Compl. ¶ 5; Def.'s Mem. 3, ECF No. 11-1.)[1] The Defendant issued a life insurance policy to Plaintiff in 1987 but cancelled it in 1992 for non-payment of premiums. *See Gianetti v. New Englance Life Ins. Co.*, 3:08-cv-01847 (AVC), 2014 WL 12648551, at *2 (D. Conn. Oct. 20, 2014). Plaintiff sued Defendant in 1996 for wrongful cancellation of the policy, alleging that his premium payments were stolen by a NELICO sales representative. *Id.* The 1996 Lawsuit concluded in 1999, when the parties entered into a written settlement agreement (the "Settlement Agreement"). (Compl. ¶ 8.)

Pursuant to the terms of the Settlement Agreement, the Defendant paid a total of $585,580.00 into a fully funded Insurance Product for the Plaintiff. (Compl. ¶ 9.) The Insurance Product vested immediately and had significant cash value. (Compl. ¶ 10.) During subsequent years, Plaintiff took loans against the Insurance Product's cash value. (Compl. ¶ 11.) Plaintiff paid the Defendant $180,994.10 in interest on those loans as well as $240,482.18 in additional contributions before surrendering the Insurance Product in 2016. (Compl. ¶¶ 12–13.)

---

[1] Although the Court, as it must, premises its decision on the facts alleged in the Complaint, the Court looks to decisions in these cases for, *inter alia*, context that does not appear in the Complaint. *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998) ("It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including case law and statutes.").

Following Plaintiff's surrender of the Insurance Product, the Defendant issued a 1099-R to Plaintiff for the 2016 tax year. (Compl. ¶ 15.) The 1099-R, issued in January 2017, reflected a taxable gain of $548,926.95. (*See* Compl. ¶ 20.)[2] However, the cost basis for the Insurance Product was $1,007,053.28, of which Defendant was aware, and because the gross proceeds from the Insurance Product was $789,409.13, the 1099-R should have reported a taxable amount of "$0". (*See* Compl. ¶ 25.) This mistake exposed Plaintiff to a tax assessment, penalties, and interest that he should not have incurred, causing, *inter alia*, mental anguish and grief. (Compl. ¶¶ 26–27.)

The Defendant had two years to modify or amend the 1099-R, but it did not do so. (Compl. ¶ 28.) Plaintiff was therefore forced to retain the services of an attorney and an accountant to appeal to the U.S. Tax Court and to expend further resources to correct the tax record and avoid having to pay unwarranted assessments, penalties, and interest. (*See* Compl. ¶ 30–31.) The IRS ultimately agreed that Defendant misreported the income on the 1099-R. (Compl. ¶ 32.) Plaintiff further alleges that the Defendants acted recklessly and intentionally in misrepresenting the amount of income on the 1099-R. (Compl. ¶ 33.)

Based on the foregoing allegations, Plaintiff brings five causes of action: Negligence (Count I); Negligent Misrepresentation (Count II); Intentional Misrepresentation (Count III); Breach of Contract (Count IV); and a violation of the Connecticut Unfair Trade Practices Act ("CUTPA," Count V). Additional allegations will be set forth as necessary.

**Legal Standard**

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

---

[2] Paragraph 15 of the Complaint indicates that $548,929.00 was the taxable gain on the 1099-R. This amount is incorrect, as this latter paragraph of the Complaint indicates and exhibits attached to Defendant's motion to dismiss confirm.

3

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678. Nevertheless, when reviewing a motion to dismiss, the court must accept well-pleaded factual allegations as true and draw "all reasonable inferences in the non-movant's favor." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010).

"Because a Rule 12(b)(6) motion challenges the complaint as presented by the plaintiff, taking no account of its basis in evidence, a court adjudicating such a motion may review only a narrow universe of materials. Generally, we do not look beyond facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (citations and internal quotation marks omitted).

**Discussion**

In seeking dismissal of the Complaint, the Defendant asserts that (1) Plaintiff's tort claims and CUTPA claim are time barred by the applicable statutes of limitations, and (2) even if timely, Plaintiff fails to plausibly allege each cause of action. The Plaintiff responds by asserting that his CUTPA and tort claims are timely because the applicable statute of limitations for each was tolled by the continuing course of conduct doctrine. Further, the Plaintiff asserts that he has adequately and plausibly alleged each cause of action.

Because the Court agrees with the Defendant that the common law tort claims and the CUTPA claim are time barred, the Court addresses this issue first.[3]

***Statute of Limitations***

"While a statute of limitations defense is most often pleaded as an affirmative defense and may require a factual inquiry beyond the face of the complaint, a defendant may raise the statute of limitations in a Rule 12(b)(6) motion where the dates in a complaint show that an action is barred by a statute of limitations." *Chisholm v. United of Omaha Life Ins. Co.*, 514 F. Supp. 2d 318, 324 (D. Conn. 2007) (quotation marks, alterations, and citation omitted).

*The Common Law Tort Claims (Counts I, II, and III)*

Conn. Gen. Stat. § 52-577 provides that "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."[4] "This statute is occurrence-based," which means that the limitations period begins to run on the date that the tortious act occurred and "the accrual period cannot be delayed to after the cause of action accrues or the injury occurs." *See Vossbrinck v. Eckert Seamans Cherin & Mellott, LLC*, 301 F. Supp. 3d 381, 387 (D. Conn. 2018).

Here, the parties agree the January 2017 issuance of the allegedly inaccurate 1099-R is "the act or omission complained of" for purposes of the statute. This action was commenced in the Superior Court for the State of Connecticut on May 25, 2021, almost four and a half years later. Accordingly, the tort claims appear to be time-barred on the face of the Complaint. *See Stephens*

---

[3] Plaintiff's breach of contract claim is timely, and Defendant does not argue otherwise. *See* Conn. Gen. Stat. § 52-576 ("No action for an account, or on any simple or implied contract, or on any contract in writing, shall be brought but within six years after the right of action accrues . . .").

[4] Despite their lengthy alternative arguments concerning Conn. Gen. Stat. § 52-584, the parties are in agreement that Conn. Gen. Stat. § 52-577 applies to the tort claims. *Compare* Def.'s Mem. 14 n.19, ECF No. 11-1 ("Since Plaintiff seeks to recover damages for economic loss, the repose period in Conn. Gen. Stat. § 52-577 governs") *with* Pl.'s Mem. in Opposition 12, ECF No. 23 ("Gianetti's claims properly fall under Conn. Gen. Stat. § 52-577"). The Court agrees and therefore does not consider the parties' arguments to the extent they are advanced in the context of Conn. Gen. Stat. § 52-584.

*v. Norwalk Hospital*, 162 F. Supp. 2d 36, 39 (D. Conn. 2001) ("Under Connecticut law, statutes of limitation are tolled by actual service on the defendant."). Plaintiff argues, however, that the statute was tolled by the continuing course of conduct doctrine. A plaintiff bears the burden of pleading facts sufficient to establish that the statute of limitations should be tolled when it appears on the face of a complaint that his claims are time-barred. *See Johnson v. Walden University*, 839 F. Supp. 2d 518, 526 (D. Conn. 2011).

"[W]hen the wrong sued upon consists of a continuing course of conduct," the continuing course of conduct doctrine provides that "the statute does not begin to run until that course of conduct is completed." *Flannery v. Singer Asset Fin. Co., LLC*, 312 Conn. 286, 311 (2014) (quoting *Handler v. Remington Arms Co.*, 144 Conn. 316, 321 (1957)). "The doctrine 'reflects the policy that, during an ongoing relationship, lawsuits are premature because specific tortious acts or omissions may be difficult to identify and may yet be remedied.'" *Slainte Investments Limited Partnership v. Jeffrey*, 142 F. Supp. 3d 239, 258 (D. Conn. 2015) (quoting *Martinelli v. Fusi*, 290 Conn. 347, 356 (2009)). In other words, the decision to render a "continuing" violation cognizable stems from the recognition that in certain cases "it would be unreasonable to require or even permit [the plaintiff] to sue separately over every incident of the defendant's unlawful conduct," *i.e.* where "[t]he injuries about which the plaintiff is complaining . . . are the consequence of a numerous and continuous series of events." *Watts v. Chittenden*, 301 Conn. 575, 587–88 (2011) (quoting *Heard v. Sheahan*, 253 F.3d 316, 319 (7th Cir. 2001) (Posner, J.)). The doctrine would be inapplicable, by contrast, in a situation "in which repeated events give rise to discrete injuries, as in suits for lost wages" based on "repeated acts of wage discrimination" because in that case "the damages from each discrete act of discrimination would be readily calculable without waiting for the entire series of acts to end." *Id.* at 588–89 (quoting *Heard*, 253 F.3d at 319–20).

Plaintiffs may properly invoke the doctrine upon a showing that "the defendant: (1) committed an initial wrong upon the plaintiff; (2) owed a continuing duty to the plaintiff that was related to the alleged original wrong; and (3) continually breached that duty." *Flannery*, 312 Conn. at 313. At the second step, "a finding that a duty continued to exist after the cessation of the act or omission relied upon" must be established by "evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act." *Id.* at 312 (quoting *Watts*, 301 Conn. at 584).

"Usually, such a special relationship is one that is built upon a fiduciary or otherwise confidential foundation. A fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other. . . . The superior position of the fiduciary or dominant party affords him great opportunity for abuse of the confidence reposed in him. . . . Fiduciaries appear in a variety of forms, including agents, partners, lawyers, directors, trustees, executors, receivers, bailees and guardians." *Essex Ins. Co. v. William Kramer & Assocs., LLC*, 331 Conn. 493, 506–07 (2019) (citations and internal quotation marks omitted). "The unique element that inheres a fiduciary duty to one party is an elevated risk that one party could be taken advantage of … [in light of the fiduciary's] easy access to, or influence regarding, another party's moneys, property or other valuable resources." *Id.* at 509.

Later wrongful conduct, meanwhile, may take the form of an act or an omission, but "[a]s a general matter, 'the continuing course of conduct is not the failure of the alleged tortfeasor to notify the plaintiff of his wrongdoing.'" *Id.* at 514 (quoting *Connel v. Colwell,* 214 Conn. 242, 255 (1990)). *See also Flannery*, 312 Conn. at 321–22 (holding that failing to disclose a prior conflict of interest did not create a continuing course of conduct); *Watts*, 301 Conn. at 588–90 ("A violation

7

is called 'continuing,' signifying that a plaintiff can reach back to its beginning even if that beginning lies outside the statutory limitations period, when it would be unreasonable to require or even permit him to sue separately over every incident of the defendant's unlawful conduct.") (quoting *Heard*, 253 F.3d at 319–20).

Here, Plaintiff asserts that "[w]hile it may not be explicitly stated in the complaint, it is plainly obvious that NELICO owed both a fiduciary and contractual duty" to Plaintiff after committing the initial wrong, tolling Conn. Gen. Stat. § 52-577. The Defendant, on the other hand, asserts that Plaintiff's knowledge of any actionable harm in January 2017 precludes use of the continuing course of conduct doctrine, that no special relationship or subsequent independent wrongful conduct exists, and that Plaintiff has not shown that the Defendant has breached any continuous or unbroken duty to the Plaintiff.

Although generally a "fact-bound" inquiry, *see Evanston Ins. Co. v. William Kramer and Assocs., LLC* 890 F.3d 40, 45 (2d Cir. 2018), the statute of limitations challenge is, in this case, meritorious. The Court finds that the Plaintiff has not sufficiently alleged a continuing course of conduct that would render these claims timely. Plaintiff concedes that he has not "explicitly" alleged that the Plaintiff and the Defendant shared a fiduciary relationship, and despite his contention that such a relationship is obvious from the face of the Complaint, the Court cannot draw such an inference. To the contrary, the Complaint simply alleges that the Defendant issued an insurance product to the Plaintiff as part of a settlement of previous litigation between them. And given the discussion above regarding how Connecticut courts view fiduciary and special relationships, it is hardly surprising that Connecticut courts have not held, as a matter of law, that the relationship between an insurer and an insured is a fiduciary one. *See Macomber v. Travelers Property and Cas. Corp.*, 261 Conn. 620, 641 (2002) ("Jurisdictions are split on the issue of

whether an insurer owes a fiduciary duty to its insured; our case law is silent on this issue except for a single pronouncement in *Harlach v. Metropolitan Property & Liability Ins. Co.*, 221 Conn. 185, 190, 602 A.2d 1007 (1992), where we characterized the relationship between the insurer and insured as 'commercial,' at least in the context of purchasing a policy."); *see also Carson v. Allianz Life Ins. Co. of North America*, 184 Conn. App. 318, 331–32 (2018) (stating that the Connecticut Supreme Court "has characterized the relationship between the insurer and the insured as 'commercial' in nature" and finding that there was no fiduciary relationship between an insured and insurer and that the continuing course of conduct doctrine did not apply). Plaintiff's assertion that he had a contractual relationship is likewise not sufficient to establish a fiduciary or confidential relationship. *See Essex Ins. Co.*, 493 Conn. at 508–09 ("A mere contractual relationship does not create a fiduciary or confidential relationship.") (alterations and citations omitted). Finally, Plaintiff's assertion that the Defendant's status as the only entity capable of correcting the 1099-R is insufficient to establish a confidential or fiduciary relationship. Such a conclusion would make every (statutorily mandated) issuer of a tax report a fiduciary to the taxpayer at issue in the report, a position that Plaintiff has offered no authority to support and that this Court is unwilling to take.

Nor has Plaintiff alleged that the Defendant engaged in later wrongful conduct related to the initial wrongful act sufficient to establish a continuing duty to the Plaintiff. While the Complaint alleges that Defendant failed to correct the 1099-R after being notified that Plaintiff disputed its accuracy, "mere failure to correct an earlier omission does not necessarily establish later wrongful conduct." *Evanston Ins. Co.*, 890 F.3d at 50 (citing *Flannery*, 312 Conn. at 321–22). *See also Fitzgerald v. Seamans*, 553 F.2d 220, 230 (D.C. Cir. 1977) ("[T]he mere failure to

9

right a wrong and make [the] plaintiff whole cannot be a continuing wrong which tolls the statute of limitations, for that is the purpose of any lawsuit and the exception would obliterate the rule.").

In the Court's view, finding a continuing duty to exist under the circumstances alleged here "would render the three year statutes of limitations meaningless." *See Flannery*, 312 Conn. at 322. The Defendant issued the 1099-R in January 2017, at which point Plaintiff learned of the alleged wrong. Plaintiff received a notice of tax deficiency in July 2019, well within the limitations period. Plaintiff litigated the deficiency assessment in tax court in the Autumn of 2019. The litigation in the tax court concluded with the filing of a stipulation dated November 21, 2019. So even though all of the events giving rise to Plaintiff's claims had come to a conclusion within the limitations period, Plaintiff waited until May of 2021 to bring this lawsuit, a lawsuit which rises out of the singular act of issuing an allegedly incorrect 1099-R. Counts I, II, and III are DISMISSED.[5]

*CUTPA (Count V)*

Similarly, the statute of limitations for a CUTPA claim is three years. *See* Conn. Gen. Stat. § 42-110g(f) ("An action under this section may not be brought more than three years after the occurrence of a violation of this chapter."). "CUTPA's three-year limitation period is triggered

---

[5] Even if timely, Plaintiff fails to plausibly allege a claim for either negligent or intentional misrepresentation, both of which require that the Defendant made a misrepresentation of fact upon which the plaintiff reasonably relied. *See Brown v. Otake*, 164 Conn. App. 686, 706 (2016) (providing the elements of a negligent misrepresentation claim and stating that "a claim of intentional misrepresentation requires the same elements as negligent misrepresentation except that the plaintiff also must prove that the defendant made the misrepresentation to induce the other party to act upon it") (alterations, quotations, and footnote omitted). Plaintiff alleges that the 1099-R was the misrepresentation of fact and that he relied on this misrepresentation to file his tax return. This argument is belied by the allegations themselves. *See Soto v. Disney Severance Pay Plan*, 26 F.4th 114, 120 (2d Cir. 2022) (The Court "must dismiss a claim if a plaintiff pleads himself out of court by alleging facts which show that he has no claim.") (quotations and alterations omitted). The entire premise of Plaintiff's case is that the 1099-R was incorrect; that he knew it was not correct; that he told the Defendant as much in an effort to get Defendant to correct the 1099-R; and that when the Defendant failed to so correct the 1099-R, the Plaintiff incurred the costs of litigating the tax assessment. It follows that Plaintiff was not deceived by the incorrect 1099-R and therefore could not have reasonably relied upon the inaccurate 1099-R to his detriment. The essence of both of these tort claims, however, is that the Plaintiff was somehow misled into believing something that was not true. *See Block v. Neal*, 460 U.S. 289, 296 (1983) ("[T]he essence of an action for misrepresentation, whether negligent or intentional, is the communication of misinformation on which the recipient relies."). To the contrary, it appears that the Plaintiff filed his 2016 tax return based upon his own assessment that the surrendered policy resulted in no capital gain to him, which further belies any claim of detrimental reliance.

upon the occurrence of the alleged violation, not the discovery of the alleged practice." *Izzarelli v. R.J. Reynolds Tobacco Co.*, 117 F. Supp. 2d 167, 177 (D. Conn. 2000). "Connecticut courts have applied the continuing course of conduct doctrine to toll the CUTPA limitations period." *Bartold v. Wells Fargo Bank, N.A.*, No. 14-cv-00865 (VAB), 2015 WL 7458504, at *5 (quoting *Independence Ins. Serv. Corp. v. Hartford Life Ins. Co.*, 472 F. Supp. 2d 183, 190 (D. Conn. 2007)).[6]

As in other instances where the doctrine applies, in order to invoke it as a basis for tolling the statute of limitations on a CUTPA claim, Connecticut courts require "evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto" as demonstrated by "either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act." *Szynkowicz v. Bonauito-O'Hara*, 170 Conn. App. 213, 229 (Conn. App. Ct. 2017) (quotation marks and citation omitted). For the same reasons discussed above with respect to the tort claims, the CUTPA claim is time-barred and dismissed.[7]

***Breach of Contract (Count IV)***

---

[6] While this is accurate, "[t]he Superior Court is split on the issue of whether the continuing course of conduct doctrine is available to toll the CUTPA statute of limitations," despite authority from the Connecticut Appellate Court suggesting otherwise. *DeJordy v. Johnson & Johnson*, No. X06CV206056878, 2021 WL 2182821, at *6 (Conn. Super. Ct. Apr. 29, 2021) (collecting cases). *See also Flannery v. Singer Asset Finance Co., LLP*, 128 Conn. App. 507, 514–15 (Conn. App. Ct. 2011) ("[A]s to the plaintiff's CUTPA claim, our Supreme Court has stated that the continuing course of conduct doctrine does not toll the three year statute of limitations set forth in § 42–110g(f).") (citing *Fichera v. Mine Hill Corp.*, 207 Conn. 204, 216–17 (1988)), *judgment affirmed* 312 Conn. 286 (2014). The parties did not brief this issue—in fact, Plaintiff failed to address the timeliness of his CUTPA claim at all. The Court nevertheless assumes that the doctrine is so available for the purposes of making this decision.

[7] Even if timely, the Complaint does not plausibly allege a CUTPA violation, because, as Plaintiff concedes, it fails to allege and is not premised upon a violation of the Connecticut Unfair Insurance Practices Act. *See State v. Acordia, Inc.*, 310 Conn. 1, 27 (2013). The Court also rejects Defendants' argument that the tax code provides an alternative statutory basis for a CUTPA claim. Even if, as argued, the Connecticut Supreme Court has left open the door for other statutes which regulate the insurance industry to be the basis for a CUTPA violation, the Defendant cites no authority that the tax code provides such a statute, and the Court has found none. Further, CUTPA is also limited when it comes to breach of contract claims, as a simple breach of contract claim—one in which aggravating circumstances are not present—cannot form the basis of a CUTPA claim. *See Boulevard Associates v. Sovereign Hotels, Inc.*, 72 F.3d 1029, 1039 (2d Cir. 1995). Plaintiff identifies no aggravating circumstances that would elevate his breach of contract claim into a CUTPA violation.

The Plaintiff claims that the issuance of the incorrect 1099-R was a breach of the Settlement Agreement because the Settlement Agreement required that the Defendant accurately report Plaintiff's taxable gains in relation to the surrender of his life insurance policy. Defendant argues that it had no duty to the Plaintiff under the terms of the Settlement Agreement when it issued the 1099-R; that even if it did, Plaintiff fails to allege a breach of this obligation; and that in any event, the Plaintiff cannot, as a matter of law, establish contract damages. Defendant's arguments go to the merits of Plaintiff's claim, not to the question of whether such a claim is adequately plead.

The Court agrees with the Plaintiff that he has stated a plausible breach of contract claim. The essential elements of a breach of contract claim are "the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages." *Meyers v. Livingston, Adler, Pulda, Meiklejohn and Kelly, P.C.*, 311 Conn. 282, 291 (2014). As the Defendant does not challenge the formation of the contract or Plaintiff's performance under the Settlement Agreement, the only questions to be answered are whether Plaintiff has adequately alleged that the Defendant had a contractual obligation that it breached and whether Plaintiff has identified any recoverable damages that flowed from that breach.

First, the Court finds that the Plaintiff has sufficiently plead the existence of an obligation in the Settlement Agreement to accurately report any capital gain income to the IRS. The Complaint clearly alleges that the Settlement Agreement required the Defendant "to properly report the financial information on the 1099-R to the IRS." And ¶ 3(B) of the Settlement Agreement (which the Court considers as it is integral to the Complaint) does state that the Defendant "will file all appropriate forms should there be a taxable gain on the policy," a phrase which may naturally be read to require accurate forms because inaccurate ones would, presumably,

be inappropriate.[8] The Court also observes that 26 U.S.C. § 6041(a) requires that the reports made to the IRS be "true and accurate." *See Hatcho Corp. v. Della Pietra*, 195 Conn. 18, 21 (1985) ("[P]arties contract with reference to existing law, except when the contract discloses a contrary intention."). Defendant's cited authority is either inapposite or unpersuasive. *See Ward v. Am. Family Life Assur. Co. of Columbus (AFLAC)*, 444 F. Supp. 2d 540, 544 (D.S.C. 2006) (finding an insurer's contested submission of a 1099-MISC reasonable on a motion for summary judgment); *Dusé v. International Business Machines Corp.*, 252 F.3d 151, 163 (2d Cir. 2001) (holding that the defendant "did not breach the provision of the Settlement Agreement that stated that IBM would disclose the settlement amount only 'as may be required by law or by business necessity,'" a requirement found in a confidentiality provision). As Plaintiff has alleged a contractual obligation to accurately report his capital gains and has alleged that the 1099-R was not accurate,[9] the Court turns to the Defendant's final argument—that Plaintiff cannot establish damages.

Broadly speaking, Plaintiff alleges and argues that but for Defendant's misrepresentations on the 1099-R, Plaintiff would not have needed to retain a certified public accountant, to obtain legal counsel, or to incur the costs of litigating in U.S. Tax Court in order to fight the IRS's notice of deficiency. The gravamen of Defendant's argument, on the other hand, is that the IRS, not the Defendant, is the final arbiter of Plaintiff's taxable income, and, consequently, the Defendant is not the cause of Plaintiff's injury. The Court agrees with the Plaintiff that he has plausibly alleged compensable damages caused by Defendant's conduct.

---

[8] As to Plaintiff's argument that the Defendant has violated implied contractual terms, the Plaintiff does not specify what those terms may be and he certainly has not plausibly alleged breach of any implied contract.
[9] The allegations that Plaintiff eventually succeeded in having his deficiency erased by the IRS bolsters the allegation that the 1099-R was inaccurate.

13

In a breach of contract action, a causation analysis occurs in the context of determining damages. *See Meadowbrook Center, Inc. v. Buchman*, 149 Conn. App. 177, 186 (2014) ("Although this court has intimated that causation is an additional element thereof, . . . proof of causation more properly is classified as part and parcel of a party's claim for breach of contract damages."). The question of causation in a breach of contract claim "focuses on whether a loss 'may fairly and reasonably be considered [as] arising naturally, *i.e.*, according to the usual course of things, from such breach of contract itself.'" *Id.* at 187 (quoting *West Haven Sound Development Corp. v. West Haven*, 201 Conn. 305, 319 (1986)) (further citations omitted). "Accordingly, under Connecticut law, the causation standard applicable to breach of contract actions asks not whether a defendant's conduct was a proximate cause of the plaintiff's injuries, but rather whether those injuries were foreseeable to the defendant and naturally and directly resulted from the defendant's conduct." *Id.* at 188–89.

Here, it was foreseeable that the submission of an inaccurate 1099-R would have consequences for the Plaintiff, who would need to take some action in response to those consequences. As alleged, the inaccurate 1099-R resulted in a tax deficiency being assessed against Plaintiff. Plaintiff then had to litigate the validity of the deficiency assessment and in so doing, incurred various costs and expenses. Under these allegations, a jury could reasonably conclude that these damages "were foreseeable to the defendant and naturally and directly resulted from the defendant's conduct." *Id.* The Court further finds that Plaintiff has sufficiently alleged that, but for Defendant's alleged misrepresentations on the 1099-R, Plaintiff would not have suffered the damages claimed. Plaintiff has therefore sufficiently alleged that he suffered compensable damages as a result of the Defendant's conduct.

Defendant's arguments to the contrary are unpersuasive. The Court finds no fault in the proposition that the IRS, as opposed to the Defendant, is the "ultimate" decisionmaker as to what tax the Plaintiff may have owed on the proceeds from the Insurance Product's surrender. *See Ward*, 444 F. Supp. 2d at 544; *see also Kelly v. Wright*, No. 08-5991 (JRT/AJB), 2010 WL 4157160, at *4 n.5 (D. Min. Sept. 22, 2010) (report and recommendation) ("The issuance of an IRS Form 1099-MISC form is not a definitive determination that the amounts described therein are 'gross income' as defined by statute. The issuance of an IRS Form 1099–MISC is another party's determination that the amounts described therein are 'gross income.'"). And Defendant may be right that the IRS may not have changed its position even if, as the Plaintiff requested, the Defendant filed a corrected 1099-R. But neither of these facts render it impossible for the Plaintiff to prove contract damages. As discussed, Plaintiff suffered some harm as soon as it became necessary for him to take action to address the tax deficiency, which he alleges was the result of the inaccurate 1099-R.[10] The motion to dismiss is therefore DENIED as to Count IV.

**Conclusion**

For the forgoing reasons, Defendant's motion to dismiss is GRANTED with respect to Counts I, II, III, and V and DENIED as to Count IV.

**SO ORDERED** at Bridgeport, Connecticut, this 23rd day of August 2022.

        */s/ Kari A. Dooley*
        KARI A. DOOLEY
        UNITED STATES DISTRICT JUDGE

---

[10] The Defendant argues in his reply brief that Plaintiff could have disputed the reported taxable gain directly with the IRS, which, according to Defendant, prevents Defendant's alleged misrepresentation from being the factual cause of Plaintiff's injury. This argument does not defeat Plaintiff's claim because Plaintiff may well have incurred the same types of expenses sought herein in order to pursue that avenue. At best, this argument goes to whether the Plaintiff mitigated his damages.